ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| HV MECHANICS; HÉCTOR O. VARGAS VILLANUEVA<br><br>Apelados<br><br>v.<br><br>MUNICIPIO DE CABO ROJO; HON. JORGE MORALES WISCOVICTH, ALCALDE MUNICIPIO DE CABO ROJO<br><br>Apelante | KLAN202300920 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Cabo Rojo<br><br>Caso Núm.: MZ2021CV01339<br><br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de noviembre de 2023.

Comparece el Municipio Autónomo de Cabo Rojo (en adelante parte apelante y/o Municipio), mediante un recurso de *Apelación*, para solicitarnos la revisión de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo (en adelante, TPI) el 27 de junio de 2023, notificada el 7 de julio de 2023.[1] Mediante el dictamen apelado, el tribunal *a quo* declaró Ha Lugar una *Demanda* en cobro de dinero y condenó al Municipio a pagar la suma de $18,650.00 dólares, desglosados de la siguiente forma: $17,250.00 dólares por el PO 20210811 y $1,400.00 dólares por el PO 20211126, más el 4.5% por concepto de interés legal según dispuesto por el Comisionado de Instituciones Financieras, desde la presentación de la *Demanda* hasta su satisfacción total.[2]

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

---

[1] Apéndice de la parte apelante, a las págs. 9-14.
[2] *Id.,* a la pág. 14.

Número Identificador

SEN2023_____

**I**

El 15 de octubre de 2021, HV Mechanics y el señor Héctor O. Vargas Villanueva (en adelante, señor Vargas Villanueva) (en conjunto, parte apelada) presentaron una *Demanda* jurada en cobro de dinero.[3] El señor Vargas Villanueva es el dueño de la corporación HV Mechanics.[4] Adujo que el Municipio le adeudaba la suma de $18,650.00 dólares por concepto de servicios prestados de mecánica para reparar el motor del Camión Ganchero MU-13049 (Req. – 20210828) con número de orden PO 20210811, los cuales fueron presuntamente claramente evidenciados y aprobados por el Departamento de Finanzas y prestados entre diciembre del año 2020 y marzo del año 2021.[5] Alegó que el Municipio, a pesar de los requerimientos de pago, se negó a pagar la deuda y que la misma era líquida y exigible.[6] La parte apelada solicitó que se declarara Ha Lugar la *Demanda* y en consecuencia se ordenara el pago de debido así como una suma por concepto de honorarios de abogados de $5,000.00 dólares, intereses sobre dichas sumas a partir de la fecha de radicación, más las costas y gastos que se incurrieran en el pleito.[7] En respuesta, y en lo pertinente, el 25 de enero de 2022, el Municipio presentó su *Contestación a la Demanda*.[8] En ella, negaron en esencia, las alegaciones.

De lo que sigue, el 20 de enero de 2023, se celebró la *Conferencia con Antelación al Juicio*.[9] Según se desprende de la *Minuta* de la vista,[10] allí se discutió la teoría de ambas partes y cuál sería la prueba documental y testifical que estaría presentando cada parte en el Juicio en su Fondo (en adelante, Juicio). Se desprende,

---

[3] *Id.,* a las págs. 1-3.
[4] *Id.,* a la pág. 1.
[5] *Id.*
[6] *Id.,* a la pág. 2.
[7] *Id.*
[8] *Id.,* a las págs. 4-6.
[9] *Id.,* a las págs. 7-8.
[10] *Id.,* a la pág. 7.

además, que, el foro primario aprobó el *Informe de Conferencia con Antelación a Juicio* y concedió término a las partes para informar estipulaciones de hechos.

El Juicio se celebró el 25 de mayo de 2023.[11]  En el Juicio, el foro primario juramentó al testigo de la parte apelada, el señor Vargas Villanueva. También juramentó a los siguientes testigos de la parte apelante: (i) señora Ivette Rodríguez; (ii) señor Roberto Menéndez; (iii) señor Kevin Ramírez Ramírez; (iv) señor Jorge L. Rodríguez; (v) señor Carlos Santiago; y (vi) señor [Á]lvaro Ayala.[12]

En cuanto a la prueba documental, las partes estipularon la siguiente prueba documental:

> Exhibit I – documento "Solicitud de Servicios"
> Exhibit II – Orden de Compra o Servicio "PO" 20210811
> Exhibit III – Orden de Compra o Servicio "PO" 20211126
> Exhibit IV – Carta enviada por representante legal del demandante al Alcalde de Cabo Rojo[13]

Durante el Juicio hubo dos (2) documentos que, aun cuando fueron marcados como identificación por la parte apelada, no se solicitó la admisión de estos en evidencia por lo que quedaron excluidos de la prueba admitida.[14]

Producto de la celebración del Juicio, el tribunal *a quo* emitió una *Sentencia* el 27 de junio de 2023 y notificó la misma el 7 de julio de 2023.[15] Producto de la prueba recibida y aquilatada en el Juicio, así como de las alegaciones admitidas, el foro primario emitió treinta y dos (32) determinaciones de hechos, las cuales transcribimos *in extenso*:

1. LA PARTE DEMANDANTE es HV MECHANICS SERVICES CORP., corporación debidamente creada bajo las leyes del Estado Libre Asociado de Puerto Rico bajo el número de Registro 467479, según surge del Registro de Corporaciones de Puerto Rico.
2. LA PARTE DEMANDADA es el Municipio Autónomo de Cabo Rojo y su alcalde, el Honorable Jorge Morales Wiscovitch.  La dirección física es PR-103,

---

[11] *Id.,* a la pág. 9.
[12] *Id.,* a la pág. 9.
[13] *Id.,* a la pág. 9.
[14] *Id.,* a la pág. 9.
[15] *Id.,* a las págs. 9-14.

Cabo Rojo, 00623, Puerto Rico. La dirección postal es P.O. Box 1308, Cabo Rojo, Puerto Rico, 00623.

3. El Sr. Héctor Vargas Villanueva (de HV Mechanics) es mecánico con licencia.

4. Desde el año 2020, HV MECHANICS SERVICES CORP., por conducto de Héctor O. Vargas Villanueva ofreció servicios al Municipio.

5. En diciembre de 2021, el Municipio de Cabo Rojo contrató a HV MECHANICS SERVICES CORP., para que reparara el Camión Ganchero MU-13049, propiedad del Municipio.

6. El Sr. Héctor O. Vargas Villanueva se personó al taller del Municipio para evaluar el camión en cuestión y una vez escaneado el mismo determinó que el problema que confrontaba estaba relacionado con el motor.

7. El 4 de diciembre de 2020, se generó la Orden de Compra o Servicio "PO" 20210811 para la reparación del "camión ganchero MU-13049" con 90 días de garantía por la suma de $17,000.00.

8. El "Work Order" y el PO 20210811 fue aprobado por el Municipio.

9. El Sr. Héctor Vargas, recogió el camión MU13409 en el Garaje Municipal de Cabo Rojo el 22 de diciembre de 2022 a las 9:50 de la mañana, en grúa, para llevarlo a su taller de reparación.

10. El Sr. Héctor O. Vargas Villanueva realizó labores de mecánica en el motor del camión y lo entregó corriendo al Municipio el 24 de febrero de 2022. El chofer del camión, Kevin Ramírez, estaba presente en ese momento y probó el camión.

11. Kevin Ramírez es el chofer de equipo pesado del Municipio de Cabo Rojo desde hace 17 años. Antes de eso también se dedicaba a chofer de equipo pesado. Kevin Ramírez era el chofer de equipo pesado asignado al camión ganchero MU13049.

12. Entregado el camión, Kevin Ramírez procedió a probarlo. Kevin le indicó a H[é]ctor O. Vargas Villanueva que el camión presentaba los mismos problemas: no tenía fuerza y emanaba gases hacia la cabina.

13. El chofer le comunicó la situación a Jorge Rodríguez, y este a su vez a Roberto Menéndez Nazario, entonces director del Garaje Municipal y Control Ambiental.

14. Jorge Rodríguez Acosta, es Supervisor del Taller de Mecánica del Garaje Municipal y Control Ambiental del Municipio de Cabo Rojo. Este ha supervisado el taller de Mecánica del Garaje Municipal de Cabo Rojo por aproximadamente 28 años. Tiene licencia de técnico automotriz y lleva alrededor de 40 años de mecánico en todas las ramas de la mecánica, incluyendo la mecánica *diesel*. Su labor como supervisor en el taller de mecánica del Municipio es el de asegurarse que los vehículos estén en buen estado y que las reparaciones se lleven a cabo correctamente.

15. Jorge Rodríguez estaba presente el 24 de febrero de 2021 cuando se probó el camión, sin embargo, no intervino como mecánico en el camión ni realizó labor de mecánica en este.

16. El testimonio de Jorge Rodríguez se limitó a indicar que el camión no había sido reparado ya que presentaba los mismos desperfectos, pero no pudo establecer que el demandante no trabajó en el motor.

17. Héctor O. Vargas Villanueva le manifestó a Gerardo, encargado de la flota del Municipio, que el problema del camión estaba relacionado a "daños ocultos", específicamente, problemas eléctricos y tuberías de escape.

18. Para Héctor O. Vargas Villanueva "daños ocultos" son los que no pueden detectarse al abrir el motor ni que se relacionan al funcionamiento del motor.

19. Héctor O. Vargas Villanueva le indicó al Municipio que para poder reparar los nuevos desperfectos se debía abrir un nuevo PO.

20. Una vez aprobado y autorizado la Orden de Compra o Servicio número 2202111126 el Sr. Héctor O. Vargas Villanueva procedió a reparar el camión ganchero de conformidad a dicha orden.

21. El 17 de marzo de 2021, el Sr. Héctor O. Vargas Villanueva entregó el camión en las facilidades del Municipio.

22. El 17 de marzo de 2021[,] [Kevin] Ramírez, el ch[o]fer (Kevin), no estaba presente en el Garaje Municipal para probar el camión, pero lo probó al día siguiente encontrando que el camión seguía con el mismo problema.

23. El 18 de marzo de 2021, el Sr. Héctor O. Vargas Villanueva entregó las facturas #508 de la referida Orden de Compra o Servicio número 20211126.

24. Roberto Menéndez Nazario conversó varias veces por teléfono con Héctor O. Vargas sobre la situación del camión y sobre los servicios relacionados al camión que no se habían pagado.

25. Ivette Rodríguez, actualmente Vicealcaldesa del Municipio Autónomo de Cabo Rojo, quien para la fecha de los hechos era Administradora Municipal, testificó que la Orden de Compra o Servicio que fueron marcadas como Exhibit II y Exhibit III estaban debidamente firmadas y autorizadas.

26. Ivette Rodríguez testificó, además, que una vez firmada la Orden de Compra o Servicio (PO) procedía el pago, pero que no pagó porque el camión seguía con desperfectos y no se podía utilizar para dar servicio.

27. Héctor O. Vargas Villanueva realizó trámites extrajudiciales para cobrar las facturas #508 y #509, como el envío de la carta certificada al Municipio de Cabo Rojo, de la prueba marcada como Exhibit IV.

28. El Municipio no pagó las facturas #508 y #509, de los PO20210811 y PO20211126.

29. El 23 de junio de 2021, Héctor Vargas se reunió con Ivette Rodríguez en la Alcaldía de Cabo Rojo para reclamar el pago de las facturas.

30. Ivette Rodríguez le indicó a Héctor O. Vargas Villanueva que no se podían pagar las facturas hasta que no reparara el camión.

31. Ivette Rodríguez conocía que el camión seguía dañado, pero desconocía que hubiese sido llevado a otro taller.

32. El Municipio llevó el camión para reparación a otro taller, puesto que se necesitaba para las labores municipales, y había transcurrido el término de la garantía.[16]

En la *Sentencia* apelada, la primera instancia judicial concluyó que, una vez un Municipio contrata mediante una orden de servicio y esta orden cumple con los requisitos legales o reglamentarios, lo que rige el negocio entre el Municipio y el contratista privado es el Código Civil de Puerto Rico (en adelante, (Código Civil).[17] Concluyó además que: (i) entre las partes existía una solicitud de servicio autorizada legal, o entiéndase, una orden de compra (PO); (ii) el Municipio no había pagado las órdenes de compra por los servicios autorizados a la parte apelada, por la cantidad adeudada; (iii) la parte apelada brindó el servicio descrito en las órdenes de compra (PO) y sobre las cuales no existía controversia en torno a su legalidad, entiéndase la PO 20210811 y la PO20211126; (iv) no surgió de la prueba que los desperfectos del camión se debieran a un trabajo no realizado por la parte apelada, empero, este sí ofreció la labor para lo cual fue solicitado; (v) de la prueba surgió que HV Mechanics realizó la reparación del motor del camión ganchero MU-13049 y no hubo prueba que estableciera que el problema específico y persistente del camión obedecía a la reparación realizada; y, que (vi) aún si el Municipio exigía la garantía, tal cual hizo, el pago tenía que efectuarse.[18] El foro primario sostuvo, además, que no existía controversia en cuanto a que la deuda era una líquida y exigible, ya que los PO20210811 y PO20211126 fueron estipulados entre las partes y nunca fueron pagados, por lo que la deuda nunca estuvo en controversia.[19] Además, razonó que la deuda era líquida y exigible también porque el Municipio sabía lo que tenía que pagar y la razón para ello,

---

[16] *Id.,* a las págs. 9-12.
[17] *Id.,* a la pág. 13.
[18] *Id.,* a la pág. 13.
[19] *Id.,* a la pág. 13.

además, por las gestiones de cobro realizadas por la parte apelada.[20] Finalmente, la primera instancia judicial expresó que el testimonio del señor Vargas Villanueva le mereció entera credibilidad y celebrado el Juicio, declaró Ha Lugar la *Demanda*.[21]

Inconforme, el 20 de julio de 2023, la parte apelante presentó una *Moción Solicitando Determinaciones de Hecho Adicionales*.[22] En su escrito, incluyó doce (12) hechos para que el foro primario los determinara como probados.[23] Sostuvo que (i) dichos hechos surgían claramente del récord, es decir, de la prueba testifical y/o documental; (ii) que los referidos hechos no fueron impugnados en forma alguna; y, que (iii) no fueron objeto de presentación de prueba de refutación por la parte apelada. En respuesta, mediante *Resolución* emitida el 15 de agosto de 2023 y notificada el 16 de agosto de 2023, el tribunal *a quo* declaró No ha Lugar la solicitud.[24]

Insatisfecho aún, el 12 de octubre de 2023,[25] compareció ante nos el Municipio, mediante recurso de *Apelación* y esgrimió la comisión de cuatro (4) errores cometidos por el foro primario, a saber:

1. Erró el Tribunal de Primera Instancia al resolver que el apelado prestó "los servicios según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica constitutiva de los servicios".

2. Erró el Tribunal de Primera Instancia al resolver que el apelante resolvió unilateralmente el contrato.

3. Erró el Tribunal de Primera Instancia al declarar no ha lugar la moción solicitando determinaciones adicionales de hecho presentada por el apelante.

4. En resumen, erró el Tribunal de Primera Instancia al resolver que habiendo sido contratado el apelado para reparar un camión de servicios básicos del Municipio, y no habiendo podido repararlo por su falta de pericia, ni

---

[20] *Id.,* a la pág. 13.
[21] *Id.,* a la pág. 14.
[22] *Id.,* a las págs. 15-17.
[23] *Id.,* a las págs. 15-16.
[24] *Id.,* a la pág. 18.
[25] El recurso de Apelación fue presentado el 12 de octubre de 2023, en el Tribunal de Primera Instancia, Sala de Cabo Rojo. Luego el 16 de octubre de 2023, fue presentado en la Secretaría del Tribunal de Apelaciones.

honrado la garantía, aun así, procedía su demanda de cobro de dinero por haber <u>tratado</u> de arreglarlo.

El 13 de noviembre de 2023, la parte apelada presentó su *Alegato de la Parte Apelada y Oposición a la Apelación*. Contando con la comparecencia de ambas partes procedemos a resolver la controversia ante nos.

## II

### A. Recurso de Apelación

La Regla 52.2 (a) de las Reglas de Procedimiento Civil[26], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[27]

No obstante, la Regla 52.2 (c) de las Reglas de Procedimiento Civil, dispone que **en aquellos casos en que** el Estado Libre Asociado de Puerto Rico y **los municipios**, sus funcionarios(as) o una de sus instrumentalidades, excluyendo a las corporaciones públicas, **sean parte en un pleito**, **el recurso de apelación para revisar sentencias del TPI deberán ser presentados por cualquier parte en el pleito perjudicada por la sentencia**, **dentro del término jurisdiccional de sesenta (60) días contados desde la fecha del archivo en autos de copia de la sentencia recurrida**.[28] (Énfasis suplido).

Respecto a la interrupción del término para apelar, dispone la Regla 52.2 (e)(1) de las Reglas de Procedimiento Civil que el transcurso del término para apelar se interrumpirá por la oportuna presentación de una moción formulada, y que el referido término

---

[26] 32 LPRA Ap. V, R. 52.2 (a).
[27] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[28] 32 LPRA Ap. V, R. 52.2 (c).

comenzará a contarse de nuevo desde que se archive en autos copia de la notificación de cualquier orden en relación con dicha moción.[29] Entre dichas órdenes se encuentra las que declaren con lugar, o denieguen o dicten sentencia enmendada ante una moción bajo la Regla 43.1 de las Reglas de Procedimiento Civil[30] para enmendar o hacer determinaciones iniciales o adicionales.[31] A tenor con la Regla 43.2 de las Reglas de Procedimiento Civil[32], dicha moción interrumpe el término para solicitar remedios posteriores a la sentencia, como lo es la presentación de un recurso de apelación.

La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[33] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> **En aquellos casos** en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o **en que los Municipios de Puerto Rico** o sus funcionarios y funcionarias **sean parte en un pleito**, el **recurso de apelación se formalizará**, **por cualquier parte en el pleito que haya sido perjudicada por la sentencia**, **presentando un escrito de apelación dentro del término jurisdiccional de sesenta días**, **contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado**. [34] (Énfasis suplido).

## B. Determinaciones de Hecho Adicionales

La Regla 43 de las Reglas de Procedimiento Civil aborda lo relativo a las enmiendas o determinaciones iniciales o adicionales.[35]

---

[29] 32 LPRA Ap. V, R. 52.2 (e)(1).
[30] 32 LPRA Ap. V, R. 43.1.
[31] 32 LPRA Ap. V, R. 52.2 (e)(1).
[32] 32 LPRA Ap. V, R. 43.2.
[33] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[34] 4 LPRA Ap. XXII-B, R. 13 (A).
[35] 32 LPRA Ap. V, R. 43.

A esos efectos, la Regla 43.1 de las Reglas de Procedimiento Civil lee como sigue:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes si éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, no haya presentado una moción para enmendarlas o no haya solicitado sentencia.
> La moción de enmiendas o determinaciones iniciales o adicionales se notificará a las demás partes en el pleito dentro de los quince (15) días establecidos por esta regla para presentarla ante el tribunal. El término para notificar será de cumplimiento estricto.[36]

Por su parte, respecto a la interrupción del término para solicitar remedios posteriores a la sentencia la Regla 43.2 de las Reglas de Procedimiento Civil dispone que:

> La moción de enmiendas o determinaciones iniciales o adicionales deberá exponer con suficiente particularidad y especificidad los hechos que el promovente estime probados, y debe fundamentarse en cuestiones sustanciales relacionadas con determinaciones de hecho pertinentes o conclusiones de derecho materiales.
> Presentada una moción por cualquier parte en el pleito para que el tribunal enmiende sus determinaciones o haga determinaciones iniciales o adicionales, quedará interrumpido el término para apelar, para todas las partes. Este término comenzará a transcurrir nuevamente tan pronto se notifique y archive en autos copia de la resolución que declara con lugar, deniega la solicitud o dicta sentencia enmendada, según sea el caso.[37]

---

[36] 32 LPRA Ap. V, R. 43.1.
[37] 32 LPRA Ap. V, R. 43.2.

## C. Cobro de Dinero

La Constitución de Puerto Rico establece que: "Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley".[38] A la luz de lo anterior, y con el propósito de lograr la buena y sana administración de los fondos públicos, la Asamblea Legislativa ha aprobado legislación que establecen un control sobre el desembolso de dichos fondos y sobre la contratación gubernamental.[39] A su vez, el Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo), a través de su jurisprudencia, ha delimitado los preceptos de una sana administración pública.[40]

A raíz de ello, bajo nuestro marco doctrinal, los preceptos legales que rigen las relaciones económicas entre entidades privadas y los municipios están revestidos de un alto interés público y aspiran a promover una recta y sana administración pública, a base de los principios fiduciarios y éticos más altos.[41] A tales efectos, la validez de los contratos con entidades gubernamentales se evalúa de acuerdo con los estatutos especiales aplicables, en lugar de acudir a las teorías generales de los contratos.[42] Acentuamos, los requisitos de forma que deben observarse al momento de pactar acuerdos con los municipios: (i) reducir el contrato a escrito; (ii) mantener un registro fiel para establecer su existencia; (iii) enviar copia a la Oficina del Contralor de Puerto Rico; y, (iv) acreditar la certeza de tiempo, a saber, que el contrato se realizó y otorgó quince (15) días antes.[43]

---

[38] Art. VI, Sec. 9, Const. PR, LPRA Tomo 1, ed. 2016, pág. 444.
[39] *Genesis Security v. Depto. Trabajo*, 204 DPR 986, 997-998 (2020). *Vicar Builders v. ELA et al.*, 192 DPR 256, 262 (2015). *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 456 (2014).
[40] *Genesis Security v. Depto. Trabajo, Id.*
[41] *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530, 533, 537 y 558 (2011).
[42] *Id.*, 537.
[43] *Id. Mun. Quebradillas v. Corp. Salud Lares*, 180 DPR 1003, 1013 (2011). *Ocasio v. Alcalde Mun. Maunabo*, 121 DPR 37, 54 (1988).

Acorde con lo antes expuesto, el Alto Foro ha favorecido la aplicación de una normativa restrictiva en cuanto a los contratos entre un ente privado y el gobierno.[44] Así, las cosas, el Gobierno, en su capacidad de contratante, sigue siendo el Gobierno, por tanto, no puede actuar de un modo que esté reñido con los principios que encarna el orden constitucional.[45] Por otro lado, el Tribunal Supremo ha advertido reiteradamente que las partes privadas deben ejercer un rol más activo al contratar con un municipio, pues estas no están exentas de cumplir con la legislación aplicable.[46]

### D. Ley Núm. 107-2020

El Código Municipal de Puerto Rico (en adelante, Código Municipal) fue creada a los fines de integrar, organizar y actualizar las leyes que disponen sobre la organización, administración y funcionamiento de los municipios.[47] El Código Municipal define servicios como: "Operaciones llevadas a cabo por toda industria o negocio de prestación de servicios al usuario o consumidor, inclusive, pero no limitados a, los servicios profesionales, siempre que no estén comprendidos por otros términos de este Código".[48]

En lo que respecta a la contratación de servicios, el Artículo 2.014 del Código Municipal lee como sigue:

> El municipio podrá contratar los servicios profesionales, técnicos y consultivos que sean necesarios para llevar a cabo las actividades, programas y operaciones municipales o para cumplir con cualquier fin público autorizado por este Código o por cualquier otro estatuto aplicable. No obstante, todo contrato que se ejecute o suscriba en contravención a lo dispuesto en este Artículo será nulo y no tendrá efecto, y los fondos públicos invertidos en su administración o ejecución serán recobrados a nombre del municipio mediante acción incoada a tal propósito.
> [...]
> Todo contrato otorgado por el municipio, tendrá que cumplir con los siguientes requisitos:

---

[44] *Vicar Builders v. ELA et al., supra*, 263.
[45] *De Jesús González v. A.C.*, 148 DPR 255, 268 (1999).
[46] *Mun. Quebradillas v. Corp. Salud Lares, supra*, 1013-1014.
[47] Código Municipal de Puerto Rico, Ley Núm. 107 de 13 de agosto de 2020, según enmendada, Art. 1.002, 21 LPRA § 7002.
[48] *Id.*, Art. 8.001 (244), 21 LPRA § 8351.

(a) que conste por escrito y esté suscrito por todas las partes;

(b) que su vigencia sea prospectiva y que no incluya cláusulas de renovación automática ni tácita reconducción;

(c) que contenga una cláusula en la cual se identifica la partida presupuestaria que sufragará el contrato;

(d) que cumpla con las disposiciones de la Ley 237-2004, según enmendada, cuando se trate de contrato de servicios profesionales;

(e) cualquier otro requisito contemplado por ley. Además, todo contrato será registrado en la Oficina del Contralor de Puerto Rico, en cumplimiento con la Ley Núm. 18 de 30 de octubre de 1975, según enmendada.

[...]

La facultad de los municipios para otorgar contratos de servicios, servicios profesionales, técnicos y consultivos, en virtud de los poderes provistos en este Código, excepto cuando exista disposición expresa en contrario, es exclusiva del Alcalde o del representante en quien este delegue. No será requerido que el Alcalde remita a la Legislatura Municipal los contratos de servicios, servicios profesionales, técnicos y consultivos, excepto cuando esta u otra Ley expresamente disponga lo contrario o expresamente requiera la intervención de la Legislatura Municipal.[49]

### E. Apreciación de la Prueba

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[50] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[51] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[52] En ese sentido, y como regla general, no

---

[49] *Id.*, Art. 2.014, 21 LPRA § 7174.

[50] *Pueblo v. Pérez Núñez*, 208 DPR 511, 514 (2022). *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). *Trinidad v. Chade*, 153 DPR 280, 289 (2001).

[51] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013). *Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

[52] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade, supra*, 291.

debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[53]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[54] El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[55] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[56]

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la

---

[53] *Pueblo v. Pérez Núñez, supra,* 529.
[54] *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996). *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994). *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987). *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).
[55] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).
[56] *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011). *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). *Pueblo v. Irizarry,* 156 DPR 780, 789 (2002). *Pueblo v. Maisonave,* 129 DPR 49, 62-63 (1991).

evidencia recibida.[57] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[58]

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[59] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[60]

Un tribunal de justicia incurre en un abuso de discreción: (i) cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[61]

### III

En el recurso ante nuestra consideración, la parte apelante acude ante nos y esboza que el TPI cometió cuatro (4) errores: (i) al resolver que la parte apelada prestó "los servicios según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica constitutiva de los servicios"; (ii) al resolver que la parte apelante resolvió unilateralmente el contrato; (iii) al declarar No Ha Lugar la *Moción Solicitando Determinaciones de Hecho Adicionales*; y, (iv) al resolver que habiendo sido contratado la parte apelada para reparar un camión de servicios básicos del Municipio, y no habiendo podido

---

[57] *Dávila Nieves v. Meléndez Marín, supra*, 772.
[58] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018). *Pueblo v. Irizarry, supra*.
[59] S*ierra v. Tribunal Superior, supra*.
[60] *Pueblo v. Pérez Núñez, supra*.
[61] *Pueblo v. Rivera Santiago, Id*.

repararlo por su falta de pericia, ni honrado la garantía, aun así, procedía su *Demanda* de cobro de dinero por haber tratado de arreglarlo.

El caso ante nos comenzó con la radicación de una *Demanda* jurada en cobro de dinero por la parte aquí apelada. En su *Demanda*, la parte apelada esbozó que el Municipio le adeudaba la suma de $18,650.00 dólares por concepto de servicios prestados de mecánica para reparar el motor del camión ganchero MU-13049 (Req. – 20210828) con número de orden PO 20210811. Expuso que los servicios en cuestión fueron prestados entre diciembre del año 2020 y marzo del año 2021.

Luego de celebrado el Juicio, en su *Sentencia* el TPI emitió treinta y dos (32) determinaciones de hechos, entre las cuales destacamos las siguientes:

> […]
> 4. Desde el año 2020, HV MECHANICS SERVICES CORP., por conducto de Héctor O. Vargas Villanueva ofreció servicios al Municipio.
> 5. En diciembre de 2021, el Municipio de Cabo Rojo contrató a HV MECHANICS SERVICES CORP., para que reparara el Camión Ganchero MU-13049, propiedad del Municipio.
> 6. El Sr. Héctor O. Vargas Villanueva se personó al taller del Municipio para evaluar el camión en cuestión y una vez escaneado el mismo determinó que el problema que confrontaba estaba relacionado con el motor.
> 7. El 4 de diciembre de 2020, se generó la Orden de Compra o Servicio "PO" 20210811 para la reparación del "camión ganchero MU-13049" con 90 días de garantía por la suma de $17,000.00.
> 8. El "Work Order" y el PO 20210811 fue aprobado por el Municipio.
> […]
> 10. El Sr. Héctor O. Vargas Villanueva realizó labores de mecánica en el motor del camión y lo entregó corriendo al Municipio el 24 de febrero de 2022. El chofer del camión, Kevin Ramírez, estaba presente en ese momento y probó el camión.
> […]
> 12. Entregado el camión, Kevin Ramírez procedió a probarlo. Kevin le indicó a H[é]ctor O. Vargas Villanueva que el camión presentaba los mismos problemas: no tenía fuerza y emanaba gases hacia la cabina.
> […]
> 15. Jorge Rodríguez estaba presente el 24 de febrero de 2021 cuando se probó el camión, sin embargo, no

intervino como mecánico en el camión ni realizó labor de mecánica en este.

16. El testimonio de Jorge Rodríguez se limitó a indicar que el camión no había sido reparado ya que presentaba los mismos desperfectos, pero no pudo establecer que el demandante no trabajó en el motor.

17. Héctor O. Vargas Villanueva le manifestó a Gerardo, encargado de la flota del Municipio, que el problema del camión estaba relacionado a "daños ocultos", específicamente, problemas eléctricos y tuberías de escape.

[...]

19. Héctor O. Vargas Villanueva le indicó al Municipio que para poder reparar los nuevos desperfectos se debía abrir un nuevo PO.

20. Una vez aprobado y autorizado la Orden de Compra o Servicio número 2202111126 el Sr. Héctor O. Vargas Villanueva procedió a reparar el camión ganchero de conformidad a dicha orden.

21. El 17 de marzo de 2021, el Sr. Héctor O. Vargas Villanueva entregó el camión en las facilidades del Municipio.

22. El 17 de marzo de 2021[,] [Kevin] Ramírez, el ch[o]fer (Kevin), no estaba presente en el Garaje Municipal para probar el camión, pero lo probó al día siguiente encontrando que el camión seguía con el mismo problema.

23. El 18 de marzo de 2021, el Sr. Héctor O. Vargas Villanueva entregó las facturas #508 de la referida Orden de Compra o Servicio número 20211126

[...]

25. Ivette Rodríguez, actualmente Vicealcaldesa del Municipio Autónomo de Cabo Rojo, quien para la fecha de los hechos era Administradora Municipal, testificó que la Orden de Compra o Servicio que fueron marcadas como Exhibit II y Exhibit III estaban debidamente firmadas y autorizadas.

26. Ivette Rodríguez testificó, además, que una vez firmada la Orden de Compra o Servicio (PO) procedía el pago, pero que no pagó porque el camión seguía con desperfectos y no se podía utilizar para dar servicio.

[...]

28. El Municipio no pagó las facturas #508 y #509, de los PO20210811 y PO20211126.

[...]

30. Ivette Rodríguez le indicó a Héctor O. Vargas Villanueva que no se podían pagar las facturas hasta que no reparara el camión.

31. Ivette Rodríguez conocía que el camión seguía dañado, pero desconocía que hubiese sido llevado a otro taller.

32. El Municipio llevó el camión para reparación a otro taller, puesto que se necesitaba para las labores municipales, y había transcurrido el término de la garantía.

No existe controversia respecto a que: (i) entre las partes existía una solicitud de servicio autorizada legal, o entiéndase, una orden de compra (PO); y, (ii) que el Municipio no ha pagado las

órdenes de compra por los servicios autorizados a la parte apelada, por la cantidad adeudada. Habida cuenta de ello, una vez el Municipio contrató mediante la orden de servicio y dicha orden cumplió con los requisitos legales o reglamentarios, lo que rige el negocio entre las partes es el Código Civil. Nuestro Código Civil regula lo que es un contrato de servicios.

Según su relación entre sí el *primer, segundo* y *cuarto* error serán discutidos en conjunto. Mientras que, el *tercer* error será discutido por separado. Antes de adentrarnos a la discusión, resulta menester destacar que no contamos con una transcripción de la prueba oral (en adelante, TPO) vertida en el Juicio.

Es de ver que, los municipios están obligados a observar cabalmente la esencia del principio consagrado en la Sección 9 del Artículo VI de la Constitución de Puerto Rico, respecto a que los fondos públicos solo pueden gastarse para fines públicos legítimos. Consecuentemente, los preceptos legales que rigen las relaciones económicas entre entidades privadas y los municipios están revestidos de un alto interés público. Debido a ello, si bien el Municipio se considera un contratante privado para los efectos de la aplicación de las disposiciones y doctrinas referentes a los contratos, la normativa vigente requiere la aplicación rigurosa de las normas pertinentes a la contratación y desembolso, que involucren bienes o fondos públicos. Cónsono con lo anterior, los tribunales tenemos el deber de velar por el cumplimiento de los requisitos y disposiciones legales dirigidas a proteger los desembolsos públicos. Enfatizamos que, las normas estatutarias relacionadas con la contratación gubernamental no persiguen proteger a las partes contratantes, sino al interés público.

El *primer* error esbozado gira sobre si incidió el TPI al resolver que la parte apelada prestó "los servicios según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica constitutiva

de los servicios". No le asiste razón. Dicho estándar surge del Artículo 1386 del Capítulo X del Código Civil referente a los servicios, el cual aborda lo relativo a las obligaciones del comitente y del prestador de servicios. En lo concerniente al prestador de servicios, dicho artículo lee como sigue:

> El prestador de servicios está obligado a:
> **(a) prestar los servicios según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente a la actividad constitutiva de los servicios;**
> (b) proveer al comitente la información esencial sobre la ejecución;
> (c) aportar los materiales utilizados corrientemente en la prestación de los servicios convenidos; y
> (d) prestar los servicios dentro del tiempo convenido o en el que razonablemente corresponda.[62] (Énfasis suplido).

Debido a que no contamos con una TPO, como ya indicamos, no nos encontramos en posición de diferir de la determinación realizada por el TPI sobre que la parte apelada realizó los trabajos descritos en la PO 20210811 y PO 20211126. De igual forma, no podemos intervenir con su determinación respecto a que de la prueba no surge que los desperfectos del camión se deban a un trabajo no realizado por la parte apelada. Siguiendo esa misma línea, no podemos intervenir con la determinación del TPI de que, tras escuchar y evaluar la prueba, no existe prueba que establezca que el problema específico y persistente del camión obedecía a la reparación realizada por la parte apelada. Subrayamos, que, en su *Sentencia,* el TPI expresó que el testimonio del señor Vargas Villanueva le mereció entera credibilidad.

El *segundo* error versa sobre si erró el TPI al resolver que la parte apelante resolvió unilateralmente el contrato. No le asiste razón. El Artículo 1389 del Capítulo X del Código Civil referente a los servicios, aborda la resolución unilateral ante la ineficacia del contrato de servicios. Dicho artículo lee como sigue: "El comitente

---

[62] Art. 1386, 31 LPRA § 10312.

puede resolver unilateralmente el contrato de servicios, aunque la ejecución haya comenzado. **Sin embargo, debe pagar al prestador los gastos en los que ha incurrido, el trabajo realizado y la utilidad que pudo obtener**".[63] (Énfasis suplido). En su *Sentencia*, el foro primario determinó que aún si el Municipio exigía la garantía, como lo hizo, tenía que efectuar el pago a la parte apelada. Sin embargo, en ninguna parte de la *Sentencia*, es decir, ni en las determinaciones de hechos ni en las conclusiones de derecho, el TPI hizo alusión alguna a que la parte apelante resolvió unilateralmente el contrato en cuestión.

El *cuarto* error esgrimido fue que erró el TPI al resolver que habiendo sido contratado la parte apelada para reparar un camión de servicios básicos del Municipio, y no habiendo podido repararlo por su falta de pericia, ni honrado la garantía, aun así, procedía su *Demanda* de cobro de dinero por haber tratado de arreglarlo. No le asiste razón. El Artículo 1253 del Capítulo VI del Código Civil sobre los efectos del contrato, aborda lo relativo al incumplimiento contractual y la excepción a dicho cumplimiento. Dicho artículo lee como sigue:

> En los contratos con prestaciones recíprocas, una las partes puede rehusar su cumplimiento mientras la otra no cumpla su contraprestación u ofrezca cumplirla.
> La excepción no procede si la contraprestación debida por el demandante debe cumplirse luego de la prestación que está a cargo del excepcionante.
> Si la contraprestación se cumple en forma parcial o defectuosa el excepcionante puede reducir su prestación en proporción a lo que sigue adeudando el demandante.[64]

Por último, el *tercer* error plantea que erró el foro primario al declarar No Ha Lugar la *Moción Solicitando Determinaciones de Hecho Adicionales*. No le asiste razón. Hay que tener presente que, las determinaciones de hecho que el foro primario estableció en su

---

[63] Art. 1389, 31 LPRA § 10323.
[64] Art. 1253, 31 LPRA § 9821.

*Sentencia* son el resultado de la evaluación de la totalidad de la prueba testifical y documental admitida en evidencia durante el Juicio. Tomando en consideración que no contamos con una TPO, como señalamos en la discusión que antecede, no nos encontramos en posición de diferir de la determinación realizada por el TPI cuando resolvió la moción antes nombrada.

Señalamos que, esta Curia cuenta solamente con "récords mudos e inexpresivos", por lo que le debemos respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[65] Reiteramos que, no debemos sustituir nuestro criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[66] Concluimos puntualizando que, si la actuación del foro primario no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[67] Luego de evaluar la totalidad del expediente ante nos, así como las posiciones de las partes y cónsono a los fundamentos que anteceden, este Panel juzga que los errores señalados no fueron cometidos, por lo que procede confirmar la *Sentencia* apelada.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[65] *Autoridad de Acueductos y Alcantarillados de Puerto Rico, supra. Trinidad v. Chade, supra.*
[66] *Pueblo v. Calderón Álvarez, supra. Coop. Seguros Múltiples de P.R. v. Lugo, supra. Rivera Pérez v. Cruz Corchado, supra.* S*ierra v. Tribunal Superior, supra.*
[67] S*ierra v. Tribunal Superior, supra.*